IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ROSA-LEE ANDERSON AND | : | |
| DEANDRE PATTERSON, | : | No. 15-2651 |
| Defendants. | : | |
| | : | |

**AMENDED MEMORANDUM OPINION**

Defendants Rosa-Lee Anderson and Deandre Patterson seek to preclude Plaintiff Allstate Insurance Company's expert witness, David B. Klitsch, from testifying to the cause of a November 17, 2013 fire at the Sharon Hill, Pennsylvania property of Allstate insured Cheryl Ciarlante. See Defs. Motion to Preclude Expert (doc. 35). Klitsch opines the fire occurred as a result of the careless and negligent disposal of a cigarette by Patterson. See Consolidated Am. Compl. (doc. 20) ¶¶ 14, 28; Def. Mot., Ex. A, Klitsch Report at 21. Defendants argue Klitsch failed to satisfy Federal Rule of Evidence 702 by failing to: (1) base his opinion on sufficient facts or data; (2) ensure his opinions are the product of reliable principles and methods; and (3) reliably apply the appropriate methodology to the facts of the case. Defs. Mot. at 2 ¶ 3.

Because Klitsch satisfied the liberal requirements for admission of expert testimony under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-91 (1993), I deny Defendants' motion. Although Klitsch failed to collect some relevant information and perform tests that would have strengthened the basis for his opinion, Defendants' challenges ultimately go to the weight of his opinions.

I.      Background

On November 17, 2013, a fire at Ciarlante's property caused extensive damage. See Cons. Am. Compl. ¶ 13; Pl. Response in Opposition to Def.'s Motion to Preclude (doc. 52) at 1. Defendant Anderson leased the property from Ciarlante, and Defendant Patterson, Anderson's grandson, used the basement as a bedroom. Cons. Am. Compl. ¶¶ 8-9. At the time of the fire, only Patterson and his mother, Yvette Calvin, were home. Pl. Pretrial Memo. at 2. Patterson told Klitsch he smoked a cigarette in his bedroom the morning of the fire, placed it in a Pepsi can on a table near the foot of the bed, left the house to go to the corner store, returned to his bedroom, and then went upstairs to eat breakfast with his mother.[1] Klitsch Report at 11. The baseboard heater was on during this time. Id. Patterson discovered the fire when he returned to his bedroom after eating breakfast. Id. at 12; Pl. Resp. (doc. 52) at 3.

According to all investigators, the fire originated in the basement room used by Patterson, Def. Mot., Ex. C, Sharon Hill Fire Dept. Report, Ex. D, Stewart Dep., Ex. A, Klitsch Report, Ex. E., Cusatis Report, but the cause of the fire was undetermined. See Pl. Resp. at 4-5, Ex. 7, Sharon Hill Fire Co. Report, Ex. 5, Pennsylvania State Police Report, Ex. 6, Deputy Fire Marshal Trooper Steward Dep. at 69-71. Plaintiff now contends, based on Klitsch's report, that the fire was caused by "Mr. Patterson's careless smoking which resulted in the ignition of Class A combustibles that were located at or near floor level along the bedroom's west wall between the baseboard heater and the bed." Klitsch Report at 21. Defendants contend the cause of the fire remains "undetermined." Def. Mot. at 1.

---

[1]     Patterson also testified he smoked in bed roughly 15 minutes before the fire after returning from the corner store, and disposed of his cigarette in a half-full Pepsi can when his mother called him for breakfast. See Pl. Resp. at 2, Ex. 5, Patterson Dep. at 34-35, 41, 45, 98.

2

II.  Law

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  This rule has been interpreted to require that expert testimony: (1) be from a qualified source; (2) be reliable; and (3) fit the facts of the case.[2]  See Daubert, 509 U.S. at 589-91; Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008).  This test should be applied flexibly in favor of admitting expert testimony.  See Daubert, 509 U.S. at 594-95; Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997).  Exclusion of expert testimony is the exception, rather than the rule, because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Fed. R. Evid. 702 (advisory committee notes) (citing Daubert, 509 U.S. at 595).

III.  Analysis

Defendants argue Klitsch's testimony is unreliable under Rule 702.[3]  Defs. Mot. at 3.

---

[2]  Rule 702 and Daubert apply to expert testimony premised on technical and specialized knowledge, including fire causation expert opinion.  See State Farm Fire & Cas. Co. v. Steffen, 948 F. Supp. 2d 434 (E.D. Pa. 2013) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-50 (1999)).

[3]  Defendants do not challenge Klitsch's qualifications or the field of technical fire analysis.

3

a. Klitsch's Report

Klitsch listed the materials he relied upon in forming his opinion, including depositions, fire investigation reports, Defendants' disclosures and answers to interrogatories, and various fire investigation publications.  See Klitsch Report at 2-3.  He explained he followed the NFPA 21 scientific method. [4]  Id. at 4-5.  He conducted a systematic scene examination, including of the exterior and interior of the property.  Id. at 6-10.  He measured the basement bedroom, noted its construction and contents, and examined the fire patterns.  Id. at 8.  He also examined the electrical distribution panel, the baseboard heater, and a wall-mounted outlet, and noted there was no abnormal electrical activity that would suggest any of those items was the ignition source.  See id. at 8-9.  He identified the area of origin of the fire as the area along the west wall of the bedroom between the bed and the baseboard heater.  Id. at 14.

Klitsch summarized his interviews with Ciarlante,[5] Anderson, Calvin, and Patterson.  Id. at 10-13.  He then listed the potential ignition sources he considered, and explained his reasons for eliminating each source except for smoking materials.  Id. at 14-21.

---

[4] Both parties cite NFPA 21, Guide to Fire and Explosion Investigations as an authoritative source on fire origin and cause investigations.  See Pl. Resp. at 16, 21; Def. Mot. at 4-5.  NFPA 921 is a guide to fire investigations developed by the National Fire Protection Association to "assist in improving the fire investigation process and the quality of information on fires resulting from the investigative process."  Chester Valley Coach Works, Inc. v. Fisher-Price, Inc., No. CIV. A. 99 CV 4197, 2001 WL 1160012, at *3 (E.D. Pa. Aug. 29, 2001).  However, I do not have to decide if NFPA 21 is the only authoritative methodology because Klitsch's Report satisfies Daubert's reliability requirements.  For example, an experienced electrical engineer's fire investigation opinion could satisfy Daubert without relying on NFPA 21.  See, e.g., Dalton v. McCourt Elec. LLC, 112 F. Supp. 3d 320, 327 n.7 (E.D. Pa. 2015) (although forensic electrical engineering consultant with 20 years of fire investigation experience failed to proceed in accordance with NFPA standards, he "adequately took a systematic approach and applied the scientific method in his investigation") (internal quotation marks omitted).

[5] Ciarlante reported to Klitsch that "she overheard a conversation between some people while standing across the street watching the fire burn," during which someone said Patterson had fallen asleep while smoking.  Klitsch Report at 10.  However, she also stated in an affidavit

4

To eliminate the floor-level electric/hydronic[6] baseboard heater mounted on the west wall, Klitsch examined the heater at the fire scene and tested another heater. Based on the lack of abnormal electrical activity on the heater and Patterson's statement that the heater operated normally at all times before the fire, Klitsch concluded the heater did not malfunction. Id. at 14-15, 17-18. Klitsch explained he also considered the possibility that articles of clothing against the heater may have ignited the fire, and researched the auto-ignition temperatures for various fabrics. Id. He tested a "similar" properly functioning heater[7] to determine whether a properly functioning heater was capable of producing sufficient heat to ignite nearby clothing. Id. at 17. Klitsch recorded the exterior maximum temperatures on the top and front cover of the test heater at three different thermostat settings, and found the operating temperatures obtained during his test did not reach the auto-ignition temperatures of most clothing. Id.; Klitsch Report, Attachment 5, Heater Test Data. He excluded the heater as a possible ignition source.

Klitsch also eliminated as ignition sources the duplex wall outlet on the west wall, id. at 18-19, a plug box, id. at 19, candle and incense use, id., intentional ignition, id. at 20-21, and solar energy, id. at 21.

---

that it was Patterson who had said he had fallen asleep while smoking. Pl. Resp., Ex. 3, 9/22/14 Ciarlante Affidavit. Defendants have contested the admission of Ciarlante's affidavit in a separate motion in limine. See Def. Motion in Limine to Preclude Testimony and Affidavit of Cheryl Ciarlante (doc. 59). Klitsch does not appear to rely on Ciarlante's statement in his report, and instead relies on Patterson's admission that he "smoked a cigarette before leaving the bedroom to go upstairs to eat breakfast with his mother." Klitsch Report at 20. In any event, Rule 703 permits experts to rely on hearsay.

[6]   Klitsch explained a hydronic heater has a main copper tube that runs down the center of the heater that is filled with fluid and contains a heating element. Klitsch Dep. at 195. When the heating element operates, it heats up the fluid and emits heat. Id.

[7]   The test heater was a Marley Model D – 70 electric/hydronic baseboard heater with a Marley T2 thermostat and safety limit control. Klitsch Report at 17.

In considering smoking materials as the ignition source, Klitsch researched an ignition handbook that listed the "materials first ignited in residential fires caused by cigarettes," including cotton, rayon, man-made fabric, and untreated, uncoated paper, and the percentages associated with each material.  Id. at 20.  The handbook explained that "[f]or a cigarette placed on a horizontal surface, the temperature recorded at the cigarette/substrate juncture is about 630-690 [degrees Celsius]."  Id.  The handbook further explained, "Bedding is often constructed from cotton, which is readily ignited by glowing combustion and is capable of sustaining a smoldering fire for an extended period."  Id.  Klitsch noted Fire Standard Compliant (FSC) and non-FSC cigarettes can ignite the same or similar combustibles.  Id.  He also noted that although no smoking materials were located within the area of origin after the fire, Patterson admitted to smoking a cigarette before leaving the bedroom just before the fire.  Id.

      b.   Klitsch's Collection of Data and Methodology

Defendants argue Klitsch failed to collect sufficient data and apply reliable principles or methodology in reaching his causation opinion, as required under Rule 702.  Defs. Mot. at 7, 11, 23.  They claim Klitsch failed to: (1) collect data on his hypothesis that Patterson's careless smoking caused the fire; (2) properly consider the baseboard heater as a possible ignition source; and (3) resolve inconsistent data by accepting Patterson's contention that he was smoking shortly before the fire but rejecting his statement that he disposed of the cigarette in a soda can.  Defs. Mot. at 7-9, 11, 25; Defs. Reply at 11-12.  They further contend Klitsch's opinion lacks consistency because it changed over time.  See id. at 26.  Defendants conclude that without sufficient data or testing, Klitsch's opinion is mere speculation.  See id. at 9, 28-29.

"An expert's testimony is admissible so long as the process or technique used in formulating the opinion is reliable," Pineda, 520 F.3d at 247 (citing In re Paoli R.R. Yard PCB

Litig., 35 F.3d 717, 742 (3d Cir. 1994)), and the expert's principles and methods are reliably applied to the facts of the case, Fed. R. Evid. 702 (advisory committee notes). The reliability prong requires an expert's opinions to "be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." In re Paoli, 35 F.3d at 742 (quoting Daubert, 509 U.S. at 590). An expert's opinion need not be "demonstrably correct," but must be "based on valid reason and reliable methodology." Oddi v. Ford Motor Co., 234 F.3d 136, 145–46 (3d Cir. 2000). Nevertheless, I still must consider Klitsch's conclusions to assess "whether they could reliably flow from the facts known to the expert and the methodology used." Id. at 146 (internal quotation marks excluded). I "may conclude that there is simply too great a gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

In determining whether a particular methodology is reliable, I may consider various factors, including: (1) whether the method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. See id. at 742 n.8; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (Daubert factors also should be applied, as appropriate, to non-scientific experts).

"While a litigant has to make more than a prima facie showing that his expert's methodology is reliable . . . 'the evidentiary requirement of reliability is lower than the merits standard of correctness.'" Pineda, 520 F.3d at 247 (quoting In re Paoli, 35 F.3d at 744). I have

7

significant latitude both in deciding "how to test an expert's reliability" and in deciding "whether or not the expert's relevant testimony is reliable." Kumho, 526 U.S. at 152. The "'inquiry envisioned by Rule 702 is . . . a flexible one.'" Pineda, 520 F.3d at 248 (quoting Daubert, 509 U.S. at 594)).

Klitsch's opinion was based on his fire investigation experience and the data he collected. See Klitsch Report at 2. Based on that foundation, I find Klitsch's collection of data sufficient, and his testimony is reliable and admissible. Although subject to challenge in some regards, Klitsch used an acceptable methodology in opining that Patterson's careless smoking caused the fire. See In re TMI Litig., 193 F.3d 613, 705 (3d Cir.1999) ("The test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research[,] . . . the test is whether the particular opinion is based on valid reasoning and reliable methodology.") (internal quotation marks excluded); Heller v. Shaw Industries, 167 F.3d 146, 152-53 (3d Cir. 1999) (quoting In re Paoli, 35 F.3d at 744) ("even if the judge believes 'there are better grounds for some alternative conclusion,' and that there are some flaws in the scientist's methods, if there are 'good grounds' for the expert's conclusion, it should be admitted"). Any weaknesses or inadequacies Defendants believe exist with the facts and assumptions of Klitsch's conclusions may be challenged on cross-examination. See Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 415 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination."); Breidor v. Sears, Roebuck, and Co., 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion

testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").

Defendants argue Klitsch failed to test his own proposed ignition scenario, relying merely on Patterson's admission that he smoked at one point on the morning of the fire, and on an ignition handbook.[8]  See Defs. Mot at 29; Defs. Reply at 19.  Klitsch testified clothing was the "most likely . . . first fuel," but admitted he only included the auto-ignition temperatures of various fabrics in his report, even though a cigarette would be a piloting ignition, and, thus, the temperatures he provided were not applicable.  Klitsch Dep. at 169-71.  He also admitted he failed to perform any physical tests related to cigarette ignition, and performed only "some research."  Id. at 171-72.  He further stated he did not know what configuration the clothing on which the cigarette fell may have been in, and whether it was a "horizontal surface," the only configuration he researched.  Id. at 172.  He again admitted his research was not applicable because it is likely clothing by the bed would be piled in a horizontal manner.  Id. at 172-73.

Although Klitsch failed to perform physical tests of his proposed ignition scenario, his process of elimination and his reliance on Patterson's admission of smoking a cigarette shortly before the fire are sufficient to support his conclusion.  See State Farm Fire & Cas. Co. v. Holmes Products, 165 F. App'x 182, 186 (3d Cir. 2006) (quoting Breidor, 722 F.2d at 1139) ("Where a fire investigator identifies the cause of fire in terms of probabilities (as opposed to mere possibilities) by eliminating all but one reasonable potential cause, such testimony is highly

---

[8]  In their Reply Brief, Defendants assert this case is analogous to State Farm Fire & Cas. Co. v. Steffan, 948 F. Supp. 2d 434 (E.D. Pa. 2013).  See Defs. Reply at 20.  In Steffan, the expert failed to perform any tests or eliminate all other possible ignition sources, and concluded discarded smoking materials caused the fire based only on the fact that the resident was a smoker.  948 F. Supp. 2d at 442-46.  Here, Patterson admitted to Klitsch that he had smoked while sitting on his bed shortly before the fire.  See Klitsch Report at 20.  Moreover, Klitsch combined a process of elimination with additional evidence of his opined ignition source.  See infra at 9-10 (discussion of process of elimination).

probative."); Holmes Products, 165 F. at 186; Kozar v. Sharp Electronics Corp., Civ.A. 04-901, 2005 WL 2456227, at *3 (W.D. Pa. Sept. 30 2005) (finding of cause of fire "may be accomplished through the credible elimination of all other potential ignition sources") (citation omitted); see also Giorgini v. Ford Motor Co., No. CIV.A. 06-0968, 2008 WL 859230, at *8 (E.D. Pa. Mar. 28, 2008) (quoting Ambrosini v. LaBarraque, 101 F.3d 129, 135 (D.C. Cir. 1996) (expert evidence "does not warrant exclusion simply because it fails to establish the causal link to a specified degree of probability . . . The dispositive question is whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue"); Kirschner v. Broadhead, 671 F.2d 1034, 1039-40 (7th Cir. 1982) (expert opinion stating what is "most likely" should be weighed by jury).

Defendants also argue Klitsch eliminated the baseboard electric heater as a possible ignition source without proper analysis.[9]  See Defs. Mot. at 25-29; Defs. Reply at 9.  Defendants contend Klitsch failed to consider potential scenarios of heater malfunction, including a failed heating element, a defective thermal protection device, or thermal runaway condition, and that Klitsch admitted he may have missed electrical activity in the heater.  See Defs. Mot. at 17-18, 21 (citing Klitsch Dep. at 179, 218); Defs. Reply at 9.

---

[9]  Although Defendants argue the heater was within the area of origin found by Klitsch, see Defs. Mot. at 11; Defs. Reply at 12, Klitsch reported "only the left most end of the heater was within the right end of the area of origin."  Klitsch Report at 17.  Nevertheless, Klitsch considered the heater as an ignition source.  Id.

Defendants also argue Klitsch failed to eliminate a light fixture as a potential ignition source.  See Defs. Mot. at 22; Defs. Reply at 16-17.  However, they admit no public or private official found evidence of a light fixture in the area of origin or considered it as an ignition source.  Defs. Reply at 16.  Although Patterson testified a light fixture existed in the bedroom, Patterson Dep. at 51-52, there was no evidence a light fixture was located in Klitsch's area of origin.  Thus, any consideration of the light fixture would have been speculative and is irrelevant.

Klitsch examined the subject heater, found no abnormal electrical activity, and concluded there was no heater malfunction. Klitsch Report at 14-1, 17-18. Klitsch testified that he examined the tube that contained the heating element, and saw no evidence of a blowout of the heating element. Klitsch Dep. at 195-96. He further explained it was "unlikely" he missed a blowout of the tube because he "would expect that a blowout on that piece of copper from a heating element inside of a tube would have been pretty remarkable." Id. at 197. Klitsch stated he rejected the possibility of a thermal runaway condition, and chose not to include it in his report, because there had been no reported problems with the heater before the fire. Id. at 75. He also admitted he failed to analyze the heater's thermal protective device, which could have been defective, id. at 8-9, and he had limited knowledge about such devices, id. at 62, 78. However, he also said he could not find any data of reported failures of hydronic, electric baseboard heaters. Id. at 10-11.

The fact that Klitsch could have conducted a more thorough examination of the heater or performed research of the heater's components goes to the weight the jury gives his opinion, and may be challenged through vigorous cross-examination. See Daubert, 509 U.S. at 596; Pineda, 520 F.3d at 249 ("[a]ny dispute between the parties about the strength of the [expert's opinions] should be resolved by the jury"). Similarly, any inconsistency between his report and his deposition testimony regarding the heater's electrical activity goes to the weight of the evidence.[10]

---

[10] Defendants rely on Meemic Ins. Co. v. Hewlett-Packard Co., 717 F. Supp. 2d 752 (D. Mich. 2010), Weisgram v. Marley, 169 F.3d 514 (8th Cir. 1999), and Presley v. Lakewood Engineering, 553 F.3d 638, 646-47 (8th Cir. 2007), in which experts were precluded for failing to sufficiently support their opinions. Defs. Reply at 17-19. Those cases are not binding here and are inapposite. In Meemic, the court found the expert failed to show that an "unknown manufacturing defect" in a power adapter was capable of causing the fire by a mere visual inspection. 717 F. Supp. 2d at 765. In Weisgram, the court found two fire investigation experts

Defendants further argue Klitsch failed to perform testing on a "substantially similar" heater, as required under Stecyk, 295 F.3d at 412-13, in which the court held the proponent of evidence must show actual and experimental conditions are substantially similar. Defs. Mot. at 12; Defs. Reply at 13-14. Klitsch testified he picked the test model because it was also hydronic and "mostly resembled" the subject heater in appearance. Klitsch Dep. at 194. He further testified he believed the subject heater was a 240-volt heater, like the model heater, based on the size of the wire that served it, id. at 63, but admitted it was possible it was a 120-volt heater, hooked to a 240-volt line, which could cause a heater to burn out, id. at 66. Those distinctions do not preclude admission of Klitsch's opinion.

As Defendant's expert David Cusatis acknowledged, the heater had no "relative specifications noted on the device that would have aided in the identification of [the] device," including signifying marks of its make, model, voltage, wattage, or amperage. Cusatis Report at 18. Thus, Klitsch's use of a model heater of the same type and appearance as the subject heater was sufficient, and Defendants may challenge any dissimilarity on cross-examination. See Stecyk, 295 F.3d at 412 ("Experimental evidence may be admitted even if conditions do not perfectly correspond to the conditions at issue in litigation; dissimilarities may affect the weight of the evidence, but not its admissibility.")

---

should not have been permitted to testify that a defective heater caused the fire based on "pure conjecture," "rank speculation," and "run[-]away . . . unsubstantiated theories." 169 F.3d at 519-20. In Presley, the court found the district court had not abused its discretion in excluding a fire expert's testimony that a heater caused the fire. However, the court found there was no bright-line rule for testing in fire cases, id. at 644, and noted the district court excluded the expert's testimony because he failed to: (1) perform testing to prove his ignition scenario; (2) point to any scientific studies or research to support his ignition scenario; and (3) exclude other possible ignition sources. Id. at 645. These cases are distinguishable because Klitsch concluded the baseboard heater in this case did not cause the fire, and employed a sufficient methodology.

Defendants also argue Klitsch was inconsistent in his opinions because he changed his opinion of causation midway through his deposition after Defendant's counsel questioned the merits and plausibility of his opinion. Defs. Mot. at 9-11 (citing Klitsch Dep. at 81-82, 151, 159). Klitsch first testified he believed ash fell off of Patterson's cigarette, causing the fire, and did not dispute Patterson's contention that he had disposed of the cigarette in a soda can. Id. at 81-82. He admitted he failed to test the heat energy of falling ash, but that he believed the ash could have been the ignition source based on his experience. Id. at 84-85. However, after the lunch break, Klitsch testified that he believed it was unlikely Patterson disposed of half his cigarette in a soda can because he had just bought two loose cigarettes from the store and, therefore, would not have wasted half a cigarette.[11] Id. at 152.

Klitsch's ash theory is not in his report. Furthermore, the inconsistency of Klitsch's testimony is relevant to his credibility, not the reliability of his methodology, and, therefore, may be highlighted during cross-examination. See In re TMI Litig., 193 F.3d at 687 ("If [expert]'s methodology did change to meet Daubert challenges, those changes strike at the heart of [expert's] credibility as a witness and the weight to be afforded his testimony.").

Similarly, Defendants may challenge Klitsch's crediting of only part of Patterson's testimony on cross-examination. See Walker v. Gordon, 46 F. App'x 691, 695 (3d Cir. 2002) ("Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert, are within the sole province of the jury."); id. at 695-96 ("An expert is . . . permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury. It is also . . . a proper subject for cross-examination.").

---

[11] Klitsch, of course, is not qualified to opine on the consumption of cigarettes, and such speculative testimony will be excluded at trial.

Even if subject to challenge in some respects, Klitsch's opinion will assist the jury in assessing the possible causes of the fire. See In re Paoli, 35 F.3d at 742 (expert's opinion must assist the trier of fact in resolving an issue relevant to the case). Thus, under Rule 702's flexible inquiry, I find Klitsch's opinion reliable and admissible.

An appropriate Order follows.